IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON, VIRGINIA

| | |
|---|---|
| APRIL EDWINA SPARKS AKERS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No. 1:08-cv-00039 |
| | ) |
| HIGHLANDS COMMUNITY | ) |
| SERVICES BOARD, | ) |
| | ) |
| JEFFREY FOX, EXECUTIVE DIRECTOR | ) |
| OF HIGHLANDS COMMUNITY SERVICES , | ) |
| | ) |
| WASHINGTON COUNTY, VIRGINIA, | ) |
| and | ) |
| THE CITY OF BRISTOL, VIRGINIA. | ) |
| | ) |
| Defendant | ) |

**REPLY TO RESPONSE OPPOSING MOTION FOR SUMMARY JUDGMENT**

Comes now the remaining Defendant in this suit, Highlands Community Services Board, by counsel, and for its Reply to the Response of Plaintiff, document 54, to the Defendant's Motion for Motion For Summary Judgment, document 46, states the following:

1

UNDISPUTED FACTS REVISITED

1. The Plaintiff does not contest in her Response that the facts set out in paragraphs 1, 4, and 5 are undisputed.

2. The Plaintiff does not dispute the facts set out as undisputed fact #2, but adds that Fred Jackson had made other sexual comments to her beyond those "reported by Plaintiff to her Supervisor, Patty Jackson." But since the Plaintiff cannot expand her Complaint and did not expand her EEOC charge beyond the information reported to her Supervisor, Patty Jackson, any additional statements by Fred Jackson are irrelevant.

3. The facts set out as undisputed in paragraph 3 on page 2 of Plaintiff's Motion for Summary Judgment, document 46, remain udisputed by Plaintiff Akers. It is Akers' assertion that she had to complain three times before Patty Jackson took any action. But it is not denied that Patty Jackson did take action. And the result of that action remains as stated in paragraph 3 of page 2 of document 46.

4. Plaintiff Akers states in her Response that the facts set out in paragraphs 6, 7, and 8, on pages 3 and 4 of document 46 are in dispute and that we are to look in the Akers' deposition at pages 29-37. The Defendant submits that there is no testimony in Akers depositions page 29-37 which places in dispute the facts set forth in paragraphs 6, 7, or, 8 on pages 3, 4, and 5 of document 46.

5. Taking one step back Ms. Akers does dispute one sentence in paragraph

3 on page 2 of document 46, that being the sentence that "neither Ms. Morris nor Ms. Jackson heard anything more about the incident. "On page 14 of her deposition Ms. Akers does state that she had one more complaint, namely wanting to be moved out of the office where she worked with Mr. Jackson, and that that request was not granted. But on the same page of the deposition Plaintiff Akers admits that except for that "one more complaint" she made "no further complaints about Mr. Jackson after the meeting to Patty Jackson or anyone else at Highland Community. See Akers deposition page 14, said deposition attached as Exhibit 3 to document 54.

     6.  Plaintiff Akers takes issue with the second sentence of the set of facts set out in paragraph 9, page 5 of document 46. The second sentence is that Executive Director Fox made the decision to terminate the employment of Ms. Akers. It is Akers contention that it was in fact not the decision of Mr. Fox to terminate the employment of Ms. Akers but in fact it was for all practical purposes the decision of Patty Jackson. But Ms. Akers' counsel does acknowledge that Mr. Fox's decision was based upon concerns about Ms. Akers interactions. And it is these interactions that had been communicated to Mr. Fox by Highlands Community Services Board Supervisory employees, Unit Manager Patty Jackson and Director of Human Resources Lori Foster, and most particularly Program Director Carolyn Peterson. It is these "interactions" which Mr. Fox describes in his Affidavit Exhibit G to document 46 at paragraphs 3-5.

7. Mr. Fox in his Affidavit Exhibit G states that he began an investigation regarding April Akers' job performance. That examination included a review of the individual Supervisor's log on Wendy Akers for the date October 27, 2005, December 14, 2005, January 20, 2006, February 24, 2006, and September 6, 2006, copies of which were supplied by Ms. Akers in Response to a Discovery Request and are attached to this Reply as Exhibit H (continuing in the sequence of Exhibits started in document 46) with certain redactions made.

8. Attached as Exhibit I is the Affidavit of Lori Foster, Director of Human Resources for Highlands Community Services Board who on February 1, 2007 made this Affidavit in connection with a grievance filed by Ms. Akers after her termination of employment on October 26, 2006. Lori Foster is the person who along with Executive Director, Jeff Fox had the meeting with Ms. Akers on October 19, 2006. See page 15 of Plaintiff Akers deposition, Exhibit 3 to document 54.

THE LAW AND ARGUMENT

9. The Plaintiff Akers brings her claim under Title VII of the Civil Rights Act of 1964 as amended. The Plaintiff's claim is one of retaliation. Plaintiff Akers, to establish a retaliation claim under Title VII must show that she had a reasonable belief that her employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting against that practice. Mayo v.

Kiwest Corp. 898 F.Supp. 335, 337(E.D.Va.1995). Plaintiff Akers claims that she lost her job in retaliation of her earlier complaint concerning sexual harassment. See Akers Charge of Discrimination, and Exhibit to the Complaint in this case. And while Title jurisprudence holds that retaliation and discrimination claims are severable, it is clear that in order to maintain a retaliation claim Akers underlying claim of sexual harassment must be reasonable. Id. at 337. According to the United States Supreme Court in Clark County School District v. Breeden 532 U.S. 268 (2001), "Sexual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'"… Only harassing conduct that is " severe or pervasive" can produce a "constructive alteration in the terms or conditions of employment"…Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment". … Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance." … Hence, " [a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment."

Breeden, Id. at 270 and 271. And according to the Western District case of Glover v. Oppleman, 178 F.Supp.2d 622 (W.D.Va. 2001) "Title VII is not a civility code, however, and does not try "to purge the work place of vulgarity." Id. at 637.

10. In a Title VII retaliation claim Ms. Akers must first allege and prove that she engaged in a "protected activity under Title VII." A protected activity would be protesting against unlawful sexual harassment. The sexual harassment must be so severe or pervasive as to alter the conditions of employment of Ms. Akers and create for Ms. Akers an abusive working environment, conduct which would produce a constructive alteration in the terms of the conditions of employment. See Breeden Id. at 270. And see Atkins v. Computer Sciences Corp. 264 F.Supp.2d 404, 411 (E.D.Va. 2003).

11. The Defendant submits that the Plaintiff herself admits that the co-worker conduct about which she complained neither met the "severe or pervasive" requirement nor the "alter the conditions of the employee's employment and create an abusive working environment" requirement such that the complaint would become "a protected activity". Ms. Akers admits on page 14 of her deposition (See Exhibit 3 attached to document 54) that after she had the meeting with Patty Jackson and Faye Morris she made no further complaints about Mr. Jackson. So the conduct of Mr. Jackson was limited to the three verbal comments. There is also no claim or evidence by Ms. Akers that she was unable to perform her duties or serve

her clients. Her testimony was that in spite of everything she was able to do her job and take care of her clients. See page 47 of the Akers deposition attached as Exhibit J to this Reply.

12. The conduct of co-employee Mr. Jackson not being sufficiently severe or pervasive, and Ms. Akers ability to perform her job having not been constructively altered by the conduct, a complaint about such conduct is, the Defendant submits, not a protected activity or protected action. And without there being a "protected action", Ms. Akers is not able to establish the first step in her case of retaliatory discharge.

13. In this case there is the additional problem for Ms. Akers that she admits in her deposition that her termination was not related to any complaint that she had made but was just related to that fact that her supervisors didn't believe her when she made the allegations against the office co-worker. See Ms. Akers deposition page 49 attached to Exhibit J to this Reply. Because of this admission by Ms. Akers, the Plaintiff is estopped from alleging a protected activity, namely a complaint relating to severe or pervasive conduct such as produces a constructive atleration in the terms or conditions of employment.

14. The Defendant admits that the Plaintiff has sufficiently alleged the second step of a wrongful of retaliatory termination that being the fact that she lost her job.

15. But the Defendant does not admit and submits that the Plaintiff cannot prove the third step of retaliatory termination that being proximate cause. First there is the problem that Ms. Akers asserts she lost her employment because she 33 months earlier brought vulgar comments made to her by a male co-worker to her supervisors attention. Second there is the problem that the expressly stated reason for her termination (insubordnation) arose out of an admitted confrontation <u>not</u> between Ms. Akers and her immediate Supervisor Patty Jackson but between Ms. Akers and the Program Director of Highlands Community Services Board Carolyn Peterson. Plaintiff Akers makes no connection between Carolyn Peterson and the episodes with co-worker Fred Jackson. See Akers deposition at page 39, a part of attached Exhibit J. Plaintiff Akers does not deny the encounter with Carolyn Peterson. She describes the detail of the encounter at pages 29-37 of her deposition, see Exhibit 6 to document 54. According to Ms. Akers Carolyn Peterson was cruel to Ms. Akers and on that day Ms. Akers and Carolyn weren't getting along at all about the interview process. See page 37 of Ms. Akers deposition, same Exhibit 6 document 54. Carolyn Peterson describes the same set of interviews in her Affidavit and statement attached to the Affidavit, Exhibit E appearing as document 50. It is this encounter, this "cruel encounter" (using Ms. Akers words) between Ms. Akers and Program Director Peterson in conjunction with the lack of temporal proximity that defeats Ms. Akers required showing of proximate causation. See Clark

v. Breeden, 532 U.S. 268, 273-274 (2001).

CONCLUSION

The Defendants submit that the undisputed facts are such that there is no material fact remaining in dispute. Ms. Akers' complaints about the verbal statements of co-worker Fred Jackson were not a protected activity as the statements did not rise to the "severe or pervasive, constructive, alteration of the conditions of employment, abusive working environment, work performance altering "level to be considered sexual harassment under Title VII.  And the proximate cause of the termination of Ms. Akers employment was not her complaining about the verbal comments of fellow employee Jackson some 33 months earlier, but was her own inability to work with her co-workers and ultimately her encounter with and failure to follow the instructions of the employer's Program Director as to whom there was no connection between the comments of co-employee Jackson some 33 months earlier. For which reasons the Defendant renews its Motion for Summary Judgment that the Complaint against the remaining Defendant be dismissed with prejudice.

**Highlands Community Services Board**   - By Counsel -

Keuling-Stout, P.C.
125 Clinton Avenue East
P.O. Box 400
Big Stone Gap, Virginia 24293
Phone: 276-523-1676
Fax: 276-523-1608
VSB #15289

By: /s/ Henry S. Keuling-Stout


### CERTIFICATE OF SERVICE

I, Henry S. Keuling-Stout, Esq., do hereby certify that on this the 8th day of November, 2009, I presented the foregoing **Reply to Response Opposing Motion for Summary Judgment** to the Clerk of the Court for filing and uploading to the CM/EMF System which will send notification of such filing to the following:

Elna Gay Leonard
Counsel for Plaintiff
249 Barter Drive
Abingdon, VA 24210
276-628-1000


   /s/Henry S. Keuling-Stout


C:\Shared Data\WORKING DOCS\1032\191\039.Reply to Response Opposing Motion for Summary Judgment.wpd